IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 16-218-3 |
| NORRIS JACKSON | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                 **JANUARY 22, 2018**

Presently before the Court is Defendant Norris Jackson's Motion to Suppress Physical

Evidence.  (ECF No. 241.)  For the following reasons, Defendant's Motion will be denied.

**I.      BACKGROUND**

On August 9, 2017, a grand jury returned a Second Superseding Indictment charging

Defendant Norris Jackson with conspiracy to distribute marijuana, conspiracy to commit money

laundering, and other substantive drug and gun possession crimes.  (Superseding Indictment,

ECF No. 302.)[1]  Defendant was charged with nine co-Defendants, some of whom have entered

plea agreements with the Government.  The Government alleges that Defendant was involved in

---

[1] Specifically, Defendant was charged with conspiracy to distribute 1000 kilograms or
more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One);
attempted possession of 50 kilograms or more of marijuana with intent to distribute, and aiding
and abetting, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Count
Two); possession of 100 kilograms of marijuana with intent to distribute, and aiding and
abetting, in violation of §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (Count Three); possession
of 100 grams or more of heroin with intent to distribute, and aiding and abetting, in violation of
§§ 841(a)(1), 841(b)(1)(A); 841(b)(1)(B), 841(b)(1)(D), and 18 U.S.C. § 2 (Count Four);
possession of firearm in furtherance of a drug trafficking crime, and aiding and abetting, in
violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count Five); possession of a firearm by a
convicted felon and aiding and abetting, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2
(Count Six); attempted possession of 100 kilograms of marijuana with intent to distribute, and
aiding and abetting, in violation of 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2
(Count Seven); and conspiracy to commit money laundering and aiding and abetting, in violation
of 18 U.S.C. § 1956(h) and 18 U.S.C. § 2 (Count Nine).

a conspiracy to transport bulk quantities of drugs across the country. In the instant Motion, Defendant seeks to suppress physical evidence that was seized during the execution of two search warrants.

### A. Factual Background

For many years, FBI Special Agent Kevin Lewis has been investigating a suspected drug trafficking organization that allegedly transports marijuana from Arizona and California to Philadelphia. As part of the investigation, on April 29, 2016, two search warrants were obtained: one for Defendant's residence at 4718 Sheldon Street, Unit C, Philadelphia PA (the "Sheldon Street Warrant," No. 16-527 (on file with Court)); and one for Defendant's sister's residence at 1216 West Harold Street, Philadelphia PA (the "Harold Street Warrant," No. 16-528 (on file with Court)). The Harold Street property is owned by Defendant's sister; however, Defendant has a key to the premises. The Harold Street Warrant is supported by a 32-page, 89-paragraph Affidavit of Probable Cause drafted by Special Agent Jeffrey Hunter. (Harold Aff. 1 (on file with Court).) The Sheldon Street Warrant is supported by a 38-page, 87-paragraph Affidavit of Probable Cause drafted by Agent Lewis. (Sheldon Aff. 1 (on file with Court).) The following pertinent information was provided in these Affidavits.

Defendant has been a subject of an investigation into a large-scale drug trafficking organization involving the use of tractor-trailers to transport marijuana, cocaine, and money from Phoenix, Arizona to Philadelphia. (Harold Aff. 2; Sheldon Aff. 2.) The FBI asserts that Defendant spends "a portion of almost every day" at the Harold Street Property and that Defendant uses this property as well as his residence at Sheldon Street to store, process, and distribute drugs. (Harold Aff. 2.) The FBI alleges that Defendant uses a white Chevrolet van to transport drugs. (*Id*. at 2-3.)

In February 2014, a Government cooperating witness provided reliable information to the Government regarding the drug trafficking organization and its members, including Defendant. (Harold Aff. 3; Sheldon Aff. 3.)  The cooperating witness explained that between 2010 and 2012, he transported bulk marijuana and cash for the organization using his tractor-trailer truck.[2]  On many occasions the cooperating witness would drive the tractor-trailer from Philadelphia to Phoenix, Arizona, where other members of the organization would load boxes of drugs onto the tractor-trailer for transport back to Philadelphia.  Other tractor-trailer drivers also transported drugs and money for the organization.  The cooperating witness identified co-Defendant Jerome Woods as the head of the organization, and Defendant Norris Jackson and co-Defendant Alan Woods as members of the organization.  The information provided by the cooperating witness has been corroborated by telephone records, surveillance, and other information known to law enforcement.

Over a 21-month period leading up to execution of the Search Warrants in April 2016, another truck driver by the name of Vernon Addison met with Defendant and other members of the organization on over 25 occasions in Philadelphia and Phoenix.  Addison delivered boxes to Defendant and other organization members on numerous occasions.  These boxes were frequently carried into Defendant's sister's residence at Harold Street.  These facts have been corroborated with physical surveillance, video surveillance, and telephone and cell site records.

The two Search Warrant Affidavits at issue here describe in detail four trips taken together by Defendant and Vernon Addison from the west coast to the east coast to deliver drugs, over a five-month period from December 2015 through April 2016.  Two trips were between Philadelphia and Phoenix and two trips were between Philadelphia and Sacramento, California.

---

[2] For ease of reference, we use the pronoun he; however, it is not known to the Court whether the cooperating witness is a male or female.

During each trip, physical and video surveillance, telephone toll records, cell site data, and airline records establish that Vernon Addison drove from South Carolina to either Phoenix or California to meet with Defendant, who flew from Philadelphia. Addison and Defendant continued to communicate as they traveled back to the east coast to unload the drugs that had been picked up in Arizona or California. Video surveillance confirmed that Defendant used the white Chevrolet van to travel from Philadelphia to locations in Maryland and Virginia, where he would meet with Addison after the two returned from the west Coast to pick up drugs. At the conclusion of each of the first three trips from the west coast to Philadelphia, law enforcement observed Defendant return to the Harold Street Property in the white Chevrolet van, and carry packages or boxes from the van into the property. The packages were believed to hold drugs.

This Motion to Suppress focuses on a misstatement contained in the Search Warrant Affidavits related to just one of the four trips involving Addison and Defendant. Specifically, Agent Lewis swore that while in Ashland Virginia, Defendant interacted with Armando Bacot, a convicted drug distributor wanted on marijuana possession charges. After execution of the Search Warrants, it was determined that the individual believed to be Bacot was not Bacot, but was Brandon Grier, another Defendant in this case. The Search Warrant Affidavits and supporting evidence of record provide the following facts as they relate to this incident.

On March 26, 2016, law enforcement observed Defendant's white Chevrolet van, which was equipped with a court-ordered tracking device, driving southbound on 1-95 in the area of Baltimore Maryland. (Sheldon Aff. 20.) The tracking device on Defendant's van revealed that the van continued to drive south and stop at a used car business called "U R Approved Motors," in Richland, Virginia. (*Id*.) Special Agent Lewis learned from a records check conducted by his partner that "U R Approved Motors" was owned by Armando Bacot, who had an outstanding

warrant for marijuana possession.  Agent Lewis also learned that Armando Bacot had been arrested numerous times, and had previously been convicted of conspiracy to distribute drugs. (*Id*. at 20-21.)  That evening, Agent Lewis observed Vernon Addison's tractor-trailer parked at a rest stop in Ashland, Virginia, and Defendant's white Chevrolet van pull into that rest stop. Addison's trailer and Defendant's van parked close together.  At this point, Agent Lewis terminated surveillance but continued to monitor the tracking device on Defendant's white Chevrolet van.  (Lewis 302 Report 2, Def.'s Supp. Mem. Ex. G.)  According to the tracking device, Defendant's white Chevrolet van then proceeded to a Self Storage facility in Ashland, Virginia.  After about an hour at the storage facility, the white Chevrolet van proceeded to a Wawa convenience store down the street from the storage facility.  (*Id*.)

Several days later, Agent Lewis conducted surveillance at the Self Storage facility and the Wawa in Ashland, Virginia.  At the Self Storage facility, Agent Lewis reviewed CCTV video footage showing Defendant's white Chevrolet van following a white sedan into the facility parking lot.  He also reviewed the CCTV video footage at the Wawa, which showed that both vehicles traveled there together, and that Defendant and the passenger of the white sedan met inside of the Wawa store.  (*Id*.)  Agent Lewis was aware from his investigation that Defendant is six feet tall and weighed approximately 150 pounds.  Agent Lewis observed that the man who exited the white sedan at Wawa appeared to be of medium complexion, with facial hair, and was significantly heavier and taller than Defendant.  (*Id*.)  Agent Lewis then learned from his partner that Armando Bacot was six feet, five inches tall and weighs 265 pounds.  (*Id*.)  Agent Lewis reviewed a black-and-white photograph of Bacot's driver's license.  Based on this information, Agent Lewis believed that the man who drove the white sedan and who met Defendant at Wawa was Armando Bacot, a convicted drug distributor.  In his FBI 302 Report dated August 7, 2017,

which was intended to "outline the circumstances surrounding the misidentification of Armando Bacot in the search warrant affidavits obtained by the FBI in April 2016," Agent Lewis stated as follows:

> [My partner] sent me a black and white driver's license photograph of BACOT. At that time, I believed that the male in the Wawa appeared to be BACOT. The height, the weight, facial hair, the complexion were all similar. Based upon the similar physical appearance and the fact that Jackson traveled several hundred miles from Philadelphia and just hours prior to meeting with Addison was parked behind Bacot's used car lot lead me to conclude that the person I observed on the Wawa CCTV was ARMANDO BACOT.

(Lewis 302 Report 3.)

A month later, the FBI arrested Defendant, Brandon Grier, and others at the Self Storage facility in Ashland Virginia. After the arrest, Agent Lewis realized that he misidentified Grier as Armando Bacot. (Lewis 302 Report 3 ("Upon observing GRIER at the time of his arrest, I realized that JACKSON had in fact met with GRIER in March 2016.").)

The parties submitted joint stipulations in support of their pleadings. The parties stipulated to the following: (1) four individuals were arrested by the FBI outside the Self Storage facility located in Ashland, Virginia, at approximately 12:20 a.m. on May 2, 2016; (2) Special Agent Lewis obtained a search warrant for the Virginia Self Storage facility at approximately 1:19 a.m. on May 1, 2016; (3) the Harold Street Search Warrant was executed in Philadelphia at approximately 12:55 a.m. on May 1, 2016; (4) at approximately 2:11 a.m. on May 1, 2016, FBI Special Agent Zachery Schloffstall sent a text message to Agent Lewis stating that "[w]e have Norris Jackson, Christopher O'Neill, Brandon Grier, and George Anderson in custody. Bacot is not here;" and (5) between approximately 2:11 a.m. and 2:45 a.m. on May 1, 2016, Special Agent Lewis read the text message from Agent Schloffstall and learned that Bacot was not one

of the individuals arrested at the Self Storage facility that morning.  (Stipulations, Def.'s Supp. Mem. Ex. H.)

### B.      Procedural History

Defendant filed the Motion to Suppress on May 4, 2017.  (Def.'s Mot., ECF No. 241.) The Government filed a Response in Opposition July 7, 2017.  (Gov't's Resp., ECF No. 284.) On August 29, 2017, Defendant filed a Supplemental Memorandum of Law in Support of his Motion to Suppress Physical Evidence.  (Def.'s Supp. Mem., ECF No. 378.)  On September 12, 2017, the Government filed a Response in Opposition to Defendant's Supplemental Memorandum.  (Gov't's Resp. Supp. Mem., ECF No. 391.)  On September 13, 2017, Defendant filed a Surreply.  (Def.'s Surreply, ECF No. 392.)  On September 19, 2017, the Government filed a Surreply.  (Gov't's Surreply, ECF No. 398.)  Arguments were held on Defendant's Motion on November 9, 2017.  (*See* ECF No. 453.)

## II.    DISCUSSION

Defendant argues that the Sheldon Street Affidavit and the Harold Street Affidavit contain material false information that was included with a reckless disregard for its truth, in violation of Defendant's Fourth Amendment rights.  Defendant refers specifically to Agent Lewis's misidentification of Brandon Grier as Armando Bacot.[3]

---

[3] Initially, Defendant also argued that Agent Lewis executed an anticipatory search warrant of the Harold Street Property in violation of Defendant's Fourth Amendment rights. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (citation and internal quotation marks omitted).  In other words, the execution of anticipatory search warrants depend upon whether "some condition precedent other than the mere passage of time—a so-called 'triggering condition'"—occurs.  *Id.*  Here, Defendant contended that one of the conditions precedent contained in the Harold Street anticipatory search Warrant did not occur.  Whether or not this is true, the anticipatory search warrant was never actually executed.  (Gov't's Resp. 6 n.3.)  As a result, Defendant's argument with respect to the anticipatory search warrant is moot.

Affidavits supporting search warrants are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant may overcome this presumption of validity and obtain a hearing under *Franks v. Delaware*, if he can make a substantial preliminary showing that the affiant made a false statement in a search warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, and that the allegedly false statement is necessary to the finding of probable cause. "To prevail, the defendant must demonstrate that what is false was either intentional or with reckless disregard by a preponderance of the evidence, and he must also demonstrate that, with the false material corrected, the affidavit's content is insufficient to establish probable cause." *United States v. Rivera*, 347 F. App'x 833, 839 (3d Cir. 2009) (citations omitted). If the defendant is successful, the search warrant is declared void and the evidence obtained pursuant to the warrant must be suppressed. *Franks*, 438 U.S. at 155-56.

The analysis proceeds in two steps. First, to be eligible for a *Franks* hearing, the defendant must show that the challenged affidavit contained a deliberately false statement, or a statement that showed reckless disregard for the truth. Second, the defendant must show that the statement was "material" to a magistrate judge's finding of probable cause. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). We address each step of the analysis as it applies to Agent Lewis's misidentification in the Search Warrant Affidavits.

### A.       False Statement Made with Reckless Disregard for the Truth

Defendant contends that Agent Lewis's misidentification of Armando Bacot in the Search Warrant Affidavits was made in reckless disregard for the truth. He does not argue that Agent Lewis deliberately made the false statement. In particular, Defendant argues that the association of Defendant with Bacot—a convicted drug distributor who was wanted for marijuana possession charges—was false, and that this misstatement undermined a finding a

probable cause.  He further contends that Agent Lewis acted recklessly by relying on "grainy" convenience store video that was obtained from a CCTV system mounted on the ceiling of a Wawa convenience store, and by comparing that video footage to a black and white driver's license photograph.  (Def.'s Supp. Mem. 3; Nov 9, 2017 Tr. 6-7 (on file with Court).)

Establishing reckless disregard for the truth requires more than a mere showing of "negligence or innocent mistake."  *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979)).  The Third Circuit has made clear that "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."  *Id.* at 783.[4]  In other words, "[t]he absence of sufficient grounding to support an averment therefore constitutes an obvious reason to doubt under *Wilson*, allowing a court to infer that an affiant acted with reckless disregard for the truth."  *United States v. Brown*, 631 F.3d 638, 648 (3d Cir. 2011) (internal quotation marks omitted) (citing *Wilson*, 212 F.3d at 788).

Based upon the totality of the Search Warrant Affidavits, as well as the representations Agent Lewis made in his July 2017 FBI 302 Report, we are satisfied that the misidentification of Brandon Grier as Armando Bacot was not made with reckless disregard for the truth.  At the time, Agent Lewis had obtained credible information about Armando Bacot and about Defendant's trip to Ashland, Virginia.  There are no obvious reasons for Agent Lewis to doubt the truth of his belief that the individual accompanying Defendant in the Ashland Wawa convenience store was in fact Armando Bacot.  Defendant had traveled to Virginia from Philadelphia in his white Chevrolet van during a trip believed to be taken for the purpose of

---

[4] A defendant may also establish that an affiant acted in reckless disregard for the truth when he or she "recklessly omits facts that any reasonable person would know that a judge would want to know."  *Wilson*, 212 F.3d at 783.  Defendant does not allege that Agent Lewis omitted any facts in reckless disregard for the truth.

transporting drugs to Philadelphia. The GPS tracker on Defendant's van revealed that Defendant stopped at a dead-end area behind "U R Approved Motors," which was determined to be Armando Bacot's used-car dealership. Video surveillance showed a white sedan accompanying Defendant's white Chevrolet van at both the Self Storage facility and the Wawa in Ashland Virginia. Agent Lewis observed that the individual driving the white sedan was significantly taller and heavier than Defendant. Agent Lewis subsequently learned that Bacot is 6'6" and 265 pounds, compared to Defendant, who is 6' tall and 150 pounds. After reviewing a picture of Armando Bacot from his 2015 driver's license, Agent Lewis believed that the male accompanying Defendant in the Wawa was Armando Bacot. Although Agent Lewis was ultimately mistaken—the individual was actually Brandon Grier—the mistake was inadvertent. The information Agent Lewis gathered from his investigation provided sufficient basis to support his averments about Armando Bacot in the Search Warrant Affidavits.

Accordingly, Defendant has failed to show that Agent Lewis's misidentification of Brendon Grier as Armando Bacot in the Search Warrant Affidavits was made in reckless disregard for the truth. Defendant's request for a *Franks* hearing must be denied.

### B.    Materiality of False Statement

Even if we found that Agent Lewis's misidentification was made in reckless disregard for the truth, Defendant would nevertheless fail to establish entitlement to a *Franks* hearing because the misidentification of Bacot was not material to a finding of probable cause. "To determine the materiality of the misstatements and omissions, [a court] excise[s] the offending inaccuracies . . . and then determine[s] whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789; *see also United States v. Yokshan*, 658 F. Supp. 2d 654, 659-60 (E.D. Pa. 2009) ("The defendant ultimately must prove by a preponderance of the evidence that a

hypothetical corrected affidavit does not support a finding of probable cause, i.e., 'that the deficiency in the affidavit was material to the original probable cause finding.'" (quoting *Yusuf*, 461 F.3d at 383)).

Here, excising the references to Armando Bacot in the Search Warrant Affidavits has no effect on the outcome of the probable cause determination. Bacot's name appears in just two of the 87 and 89 paragraphs of allegations contained in each of the Affidavits. The identification was simply one minor piece of a comprehensive factual picture describing Defendant's involvement in an extensive conspiracy to distribute drugs, and how the two properties subject to the Search Warrants were used as a part of that scheme. For example, the Search Warrant Affidavits describe information learned by the FBI from the cooperating witness. The cooperating witness specifically identified Defendant as a member of an organization that used tractor-trailers to transport bulk amounts of marijuana from the west coast to the east coast. The Search Warrant Affidavits also describe in detail four trips taken by Defendant and Vernon Addison to transport drugs from the California and Arizona to Philadelphia. The Affidavits further describe the mountain of corroborating evidence—including physical surveillance, video surveillance, and telephone and cell site records—related to the four trips taken by Defendant and Addison. Defendant ignores the fact that the FBI had been tracking him and Addison, and that the FBI believed that their trip east involved transportation of drugs well before Defendant was alleged to have met with Bacot in Ashland, Virginia.

Defendant's argument that the Affidavits lacked probable cause because the FBI never actually observed any drugs is misplaced. "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *United States v. Stearn*, 597 F.3d 540, 558

(3d Cir. 2010). Even without any reference to Bacot, the Affidavits establish probable cause to believe that the FBI agents would find evidence of drug trafficking at both the Sheldon Street or Harold Street properties. Although the Harold Street property is not Defendant's actual residence, the property was owned by his sister, Defendant had a key, and Defendant and other members of the organization were seen unloading boxes there and carrying them into the residence. *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993))).

It is clear that Defendant has failed to establish the necessary "substantial preliminary showing" to warrant a *Franks* hearing. Agent Lewis's misidentification in the Search Warrants was not made with reckless disregard of the truth. Moreover, the Affidavits contain probable cause even without the misidentification.

## III. CONCLUSION

For these reasons, Defendant's Motion to Suppress Physical Evidence will be denied, and Defendant's request for a *Franks* hearing will be denied.

An appropriate Order follows.

**BY THE COURT:**


**_/s/R. Barclay Surrick_**
**U.S. District Judge**